IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36128-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN J. LAURICELLA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — John Lauricella appeals one of two convictions, his

conviction for intimidating a public servant. He argues the State failed to present

evidence that he made threats in an attempt to influence a peace officer in the officer's

public duty. We disagree and affirm that conviction.

In a supplemental brief, he challenges various legal financial obligations (LFOs)

imposed against him by the trial court. In accordance with the State's request, we remand

and direct the trial court to strike all LFOs except the $500 victim assessment fee and the

$100 DNA[1] collection fee.

---

[1] Deoxyribonucleic acid.

FACTS

John Lauricella was driving with his son in the Little Pend Oreille National Wildlife Refuge. Lauricella drove past Officer Matthew Konkle who was approaching from the opposite direction. Officer Konkle followed Lauricella's pickup and eventually Lauricella pulled over to the side of the road. Officer Konkle never activated his patrol lights. After stopping, Lauricella got out of his pickup and walked to the back of it. Officer Konkle approached Lauricella and asked whether he had seen any deer or if he was hunting.

Lauricella responded he was looking for coyotes. Officer Konkle saw a shotgun inside the pickup and asked Lauricella's son if it was loaded. Lauricella's son said it was not loaded and showed Officer Konkle the empty chamber. When Officer Konkle asked to see the shotgun so he could make sure there were no rounds in the tube, Lauricella became irate and angry.

Officer Konkle then asked Lauricella for his small game hunting license because Lauricella was looking for coyotes. Lauricella responded that he did not have a small game hunting license because he was not hunting.

Officer Konkle began putting Lauricella in handcuffs for suspicion of hunting small game without a license. Lauricella then became even more irate, telling his son to

2

take out his phone and start recording. He also told his son to "load up," which Officer Konkle understood to mean to load the shotgun. Report of Proceedings (RP) (May 16, 2018, afternoon session) at 72. Because Officer Konkle was alone, he decided to de-escalate the situation and instead write a ticket.

Lauricella warned, "Next time cuffs come out, f-ing guns out." Ex. 3, Video 1 at 11:30. Lauricella became even more agitated when he learned that Officer Konkle was going to issue him a ticket. When the officer returned to his patrol car to write the ticket, Lauricella began threatening he would shoot any officer who came near him.

In the video recording taken by Lauricella's son, Lauricella can be heard telling his son to stand in front of him, saying, "Women and children in the front." Ex. 3, Video 2, 0:06:40-0:06:48. He told Officer Konkle he could shoot, "or be nice like you should and not write a ticket." Ex. 3, Video 2 at 6:47.

When discussing whether Officer Konkle was going to write a ticket, Lauricella said, "you want to escalate shit tough guy? Write a ticket." Ex. 3, Video 2 at 7:32. He told the officer if he wrote a ticket he would "wipe my ass with it right on your f-ing face." Ex. 3, Video 2 at 9:20. He continued, "Write a ticket . . . if you want to escalate . . . if you want a shoot-out." Ex. 3, Video 2 at 17:42.

Backup arrived, and Lauricella was taken into custody. A search incident to arrest found a loaded 9 mm handgun on Lauricella.

The State charged Lauricella with count 1, intimidating a public servant, and alleged a firearm enhancement, count 2, obstructing a law enforcement officer, and count 3, second degree unlawful hunting of wild animals.

The case proceeded to a jury trial. The jury found Lauricella guilty of intimidating a public servant and returned a yes on the firearm enhancement. The jury also found Lauricella guilty of obstructing a public servant, but not guilty of unlawful hunting of wild animals.

The court imposed LFOs in the amount of $1,100. The LFOs included nondiscretionary and discretionary costs, including a $200 criminal filing fee.

Lauricella timely appealed to this court.

## ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Lauricella first argues the State presented insufficient evidence for the jury to find him guilty of intimidating a public servant. Specifically, Lauricella argues the evidence was insufficient for the jury to find that his conduct was intended to influence the arresting officer's official actions. We disagree.

4

In a criminal case, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* In a challenge to the sufficiency of the evidence, circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

RCW 9A.76.180(1) provides that a person "is guilty of intimidating a public servant if, by use of a threat, he or she attempts to influence a public servant's vote, opinion, decision, or other official action as a public servant." The State must prove that the defendant made a threat and that the threat was made with the purpose of influencing the public servant's official action. *State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010). "[T]here must be some evidence suggesting an attempt to influence, aside from

5

the threats themselves or the defendant's generalized anger at the circumstances." *Id.* at 877.

In *Montano*, the defendant violently resisted two arresting police officers, and he became increasingly angry and hurled insults and threats at them. *Id.* at 874-75, 879. The defendant said to the officers, "'I know when you get off work, and I will be waiting for you,'" "'I'll kick your ass,'" and "'I know you are afraid, I can see it in your eyes.'" *Id.* at 875. Our Supreme Court affirmed the pretrial dismissal, concluding,

> [T]here is simply no evidence to suggest that [the defendant] . . . made his threats[] for the purpose of influencing the police officers' actions. Instead, the evidence shows a man who was angry at being detained and who expressed that anger toward the police officers. . . .
> . . . The State cannot bring an intimidation charge any time a defendant insults or threatens a public servant. . . . [The statute requires] some evidence . . . [that] link[s] the defendant's behavior to an official action that the defendant wishes to influence.

*Id.* at 879-80. Thus, the court held that Mr. Montano could not be guilty of intimidating a public servant because there was no link between his threats and the officers' actions he wished to influence.

In *State v. Burke*, 132 Wn. App. 415, 417, 132 P.3d 1095 (2006), the drunken defendant belly bumped an officer investigating an underage drinking party. Burke then yelled profanities and threats at the officer, took a fighting stance, threw a punch, and eventually was arrested. *Id.* at 417-18. In reversing Burke's conviction, we noted an

absence of evidence that Burke intended to influence the officer's official actions and noted that neither anger nor assaultive behavior implies an intent to influence. *Id.* at 422-23.

The link, missing in *Montano* and *Burke*, is present here. Lauricella repeatedly asked Officer Konkle not to write a ticket. He then made both implied and explicit threats that he would shoot Officer Konkle if he tried to give him a ticket. We conclude that the State presented sufficient evidence for a jury to find beyond a reasonable doubt that Lauricella attempted to influence Officer Konkle not to give him a ticket.

B.      LFOs

In a supplemental brief, Lauricella raises two new issues. The State does not object to Lauricella's supplemental brief.

Lauricella first argues that a new sentencing hearing must be ordered because the trial court imposed discretionary LFOs against him without making an individualized inquiry into his ability to pay them, as required by *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). The State responds that the trial court did have sufficient information about Lauricella to determine that he had the ability to pay discretionary LFOs. The State cites various statements made by Lauricella's attorney, wife, and friend, while asking the court not to impose too harsh of a sentence. We disagree with the State.

At the sentencing hearing, Lauricella's attorney, wife, and friend made various generalized statements about how Lauricella is a good man, has worked, has volunteered, and "was on the road to starting a pest control business." RP (June 5, 2018) at 338. But the trial court did not make any specific inquiries about Lauricella's current or likely future ability to pay, including his specific assets, sources of income, or debt. *Blazina* requires a specific inquiry into such matters. *Blazina*, 182 Wn.2d at 838.

Lauricella next argues the trial court erred when it imposed the $200 criminal filing fee. Because of the State's request, discussed below, we need not directly address Lauricella's argument.

The State requests that rather than order a new sentencing hearing—which we would because the trial court failed to conduct a sufficient *Blazina* inquiry—that we remand with directions for the trial court to strike all LFOs except the $500 crime victim fund assessment and the $100 DNA collection fee. Supp'l Br. of Resp't at 3. We grant the State's request.

No. 36128-4-III
*State v. Lauricella*

Affirm conviction, remand to strike costs.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:


_____          _____
Fearing, J.                                                      Pennell, J.